IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MORGAN GARTNER, Individually and as Next Friend of E.G., a minor child,<br>*Plaintiff*,<br><br>vs.<br><br>AMAZON.COM, INC.;<br>and HU XI JIE,<br>*Defendants*. | § § § § § § § § § § § § § § | CIVIL ACTION NO._____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Morgan Gartner, individually and as next friend of E.G., a minor child, respectfully comes before this Court and asserts the following factual allegations and causes of action against Defendants Amazon.com, Inc and Hu Xi Jie.

### I. INTRODUCTION

1. On April 17, 2018, E.G., then a 19-month old toddler, ingested a button battery from a generic Apple TV remote control ("Remote") that was sold by Amazon.com. The button battery became lodged in her esophagus. The electric current from the battery combined with saliva to form a corrosive alkaline. After realizing she had ingested the button battery, E.G.'s parents rushed her to the hospital emergency room where it was extracted. E.G. suffered severe tissue damage to her esophagus.

2. The dangers to young children posed by button batteries have been extensively documented in recent years. Consumer watch groups, pediatricians, the media, and the toy industry have come together to mandate that electronics manufacturers employ relatively-inexpensive alternative

designs to prevent young children like E.G. from accessing and ingesting the batteries. The industry standard requires manufacturers to design battery compartments so that button batteries may only be accessed by using a tool or multiple simultaneous maneuvers.

3. The Remote's battery compartment as designed, manufactured, and sold by Defendants failed to require a tool or independent simultaneous maneuvers to access it. As a result, 19 month-old E.G. was able to access the button battery, ingest it orally, and suffer extensive, permanent injuries to her esophagus. Accordingly, Plaintiff brings this lawsuit based on design defect, negligence, gross negligence, inadequate warning, and breach of warranties of the Remote.

## II. PARTIES

4. Plaintiff Morgan Gartner is an individual residing in Texas and the natural mother of E.G., a minor child.

5. Defendant Hu Xi Jie, a Chinese individual or entity residing and/or with its principal place of business at 6C Building 8, Changchengshengshii Garden, Fushan District, Shenzhen, Guangdong 518048, China, has not designated an agent for service of process in Texas and may be served with process by serving the Texas Secretary of State, 1019 Brazos St., Austin, Texas 78701.

6. Defendant Amazon.com, Inc., a Delaware corporation with its principal office located at 410 Terry Avenue North Seattle, Washington. Defendant Amazon.com, Inc. has not designated an agent for service of process in Texas and may be served with process by serving the Texas Secretary of State, 1019 Brazos St., Austin, Texas 78701.

## III. JURISDICTION AND VENUE

7. Plaintiff contends the Court has diversity jurisdiction over this lawsuit because the parties are citizens of diverse states and the amount in controversy exceeds $75,000.

8. This Court is the proper venue to hear this lawsuit pursuant to 28 U.S.C. § 1391 (b)(2). The events giving rise to this lawsuit occurred in Montgomery County, Texas.

## IV. FACTS

9. Defendant Amazon.com, Inc. ("Amazon") is the world's largest E-Commerce website, grossing nearly $178 billion in sales revenue in 2017 and boasting more than half a million employees worldwide. According to its most recent financial disclosures, Defendant Amazon "seeks to be the Earth's most customer-centric company" guided by "customer obsession."

10. Defendant Amazon sells a variety of products including electronic devices produced in Asia for consumers located in the United States. Among them, Defendant Amazon sells inexpensive generic remote-control devices powered by button batteries. Defendant Amazon regularly conducts business in Texas.

11. On March 12, 2017, Plaintiff's husband, Carey Gartner, ordered a generic Apple TV Remote ("Remote") offered for sale on Defendant Amazon's website listed as "Generic New Universal Replaced Infrared Remote fit for apple MC 377LI/A MC377/LI and Mac ipad TV 2 TV 3 Music System Macbook." Plaintiff's husband paid $5.99 for the Remote through his personal Amazon Prime account. At no time did E.G. or Plaintiff Morgan Gartner use Defendant Amazon's website to order the Remote.


*Remote*


*Remote Battery Compartment Detail*

12.     Upon information and belief, the Remote was listed by a user only identified as "USA Shopping 7693" but shipped from an Amazon warehouse located in the United States. "USA Shopping 7693" was a user account belonging to Defendant Hu Xi Jie. Upon information and belief, Hu Xie Jie participated in the "Fulfillment by Amazon" and "Amazon Prime" programs through the "USA Shopping 7693" user account. Upon information and belief, the Remote was manufactured by Defendant Hu Xi Jie in China.

13.     Defendant Amazon exercised substantial control over the sales, payment, packaging and delivery processes when selling products through its "Amazon Prime" and "Fulfillment by Amazon" programs. The Remote was stored in an Amazon warehouse in the United States and shipped from this warehouse when the Remote was ordered online by Plaintiff.

14.     Notably, Amazon.com retained the right to edit content on any listing and determine the appearance of product listings.  This included content containing warnings regarding the danger of the product to young children. Defendant Amazon exercised substantial control over the warnings and instructions that accompanied the products listed on its website. Defendant Amazon failed to provide any warnings as to the serious potential dangers associated with the Remote. E.G.'s personal injuries resulted from the inadequacy of warnings on Defendant Amazon's website.  Had there been any warnings, E.G.'s father would never have purchased the remote.

15.     Unbeknownst to Plaintiff and Plaintiff's husband, the Remote they purchased was designed with a dangerous flaw. The battery compartment on the back of the Remote was designed to easily open, revealing a small lithium button battery which invariably comes loose and falls out. Ingested by a child or a pet, the lithium battery reacts with saliva and creates a caustic fluid, quickly causing severe injuries. The danger of button batteries and the need to properly design devices to secure them from toddlers was widely known in the electronics and consumer goods industry as

evidenced by the myriad articles, reports and standards published on this topic. Manufacturers of remote controllers, toys and other small household electronics have known about the dangers posed by easily accessible button batteries for years.

16. On or about April 17, 2018, the battery compartment on the Remote purchased by Plaintiff's husband opened and the button battery became exposed; only to be ingested by E.G. After a few hours, once it became clear that E.G. had ingested the battery from the Remote, Plaintiff took E.G. to the emergency room where x-rays were taken and the button was surgically removed. At the time of the battery's removal the caustic fluid created by the battery's electric charge had already caused severe, permanent, irreversible damage to E.G.'s esophagus.



17. E.G's personal injuries are severe and will likely never fully heal. E.G.'s injuries resulted in a serious risk that the scarring in her esophagus may cause food and other debris to lodge itself

in her esophageal tract. Because of this, E.G. has an increased risk for infection and choking. E.G. may be scheduled to undergo additional surgery to help with her recovery.

18. The Remote design was defective because it allowed children easy access to highly dangerous and easily ingestible button batteries. The unreasonably dangerous Remote did not comply with industry-wide standards for small electronic devices containing button batteries.

19. One example of such a standard is UL 4200A. On November 10, 2015, *UL 4200A: Standard for Safety for Products Incorporating Button Cell Batteries of Lithium and Similar Technologies* went into effect. UL 4200A is an industry standard which defines the methods and precautions that household product makers should take to prevent button batteries from being removed or falling out of household products used in areas where children are normally present. UL 4200A requires performance tests, including abuse tests, to determine the potential for an accidental battery release. It also specifies warning language and labels about the potential hazard of severe internal burns. The electric current produced by button batteries can ionize saliva, forming a corrosive alkaline that damages surrounding tissues.[1]

20. The remote control containing the button battery that E.G. ingested was not in compliance with long-standing safety standards including those articulated in UL 4200A. Instead, the button batteries could be removed with a slight manipulation of the Remote. This Remote design was unreasonably and extremely dangerous. Plaintiffs' injuries were a direct and proximate result of the defective Remote sold by Defendants.

---

[1] *UL Announces New Standard for Products Using Lithium Button or Coin Cell Batteries*. Underwriters Laboratories. http://www.ul.com/newsroom/pressreleases/ul-announces-new-standard-for-products-using-lithium-button-or-coin-cell-batteries/ (accessed July 26, 2016).

## V. CAUSES OF ACTION

*Count 1:* Strict Products Liability – Design Defect (All Defendants)

21.     Plaintiff incorporates the preceding paragraphs by reference.

22.     The Remote at issue in this case was in a defective condition that was unreasonably dangerous to E.G. at the time it left Defendants' control and was placed into the stream of commerce. There were safer alternative designs available that that were economically feasible. The risk of dangers inherent with the Remote's battery compartment as designed outweighed any benefits of the design. The product was expected to and did reach E.G. without substantial change in the condition in which it was sold. Defendants were sellers engaged in the business of selling products like the Remote at issue in this case.

23.     Defendants Hu Xi Jie and Amazon sold the Remote at issue in this case. Defendant Hu Xi Jie manufactured the subject Remote, and with the help of Defendant Amazon exported it to the United States, where it was stored in an Amazon warehouse. Defendant Amazon then sold the Remotes to Amazon's Prime customers across the United States.

24.     Upon information and belief, Defendant Hu Xi Jie manufactured the Remote in China, outside the jurisdiction of this Court, and used Defendant Amazon to act as the seller of the device in the United States. At all times, Defendant Amazon was engaged in the business of distributing or otherwise placing, for a commercial purpose, the Remote and other similar products in the stream of commerce.

25.     Upon information and belief, jurisdiction cannot be obtained over the manufacturer of the Remote. Defendant Amazon is liable as nonmanufacturing seller to the extent that Defendant Hu Xi Jie is not subject to the jurisdiction of this Court. TEXAS CIVIL PRACTICE & REMEDIES CODE § 82.003 (a)(7)(B).

26. Defendant Amazon was actually aware of the defect inherent in Defendants' Remote because of continuous consumer complaints about the Remote's battery compartment. Defendant Amazon was also aware of industry standards and that the remote failed to comply with any safety standards designed to protect toddlers from button batteries. Defendant Amazon is liable as a nonmanufacturing seller to the extent that Defendant Amazon actually knew of a defect to the Remote at the time when it sold the Remote to Plaintiff's husband. TEXAS CIVIL PRACTICE & REMEDIES CODE § 82.003 (a)(6).

27. Defendant Amazon failed to provide an adequate warning or instruction which advised consumers of the grave dangers posed by the Remote. Defendant Amazon exercised substantial control over the content of a warning or instruction that accompanied the Remote. The warnings and instructions were grossly inadequate and E.G.'s personal injuries resulted from the lack of warning. Defendant Amazon is liable as a nonmanufacturing seller to the extent that it failed to warn about the dangers of the Remote it was selling. TEXAS CIVIL PRACTICE & REMEDIES CODE § 82.003 (a)(4).

28. As a direct result of the unreasonably dangerous Remote, Plaintiff and E.G. suffered injuries and damages in an amount to be determined at trial. Defendants' Remote was the sole producing cause of E.G.'s injuries. Accordingly, Defendants are strictly liable for Plaintiffs' damages.

*Count 2*: Strict Products Liability – Marketing Defect Amazon

29. Plaintiff incorporates the preceding paragraphs by reference.

30. Defendant Amazon exercised substantial control over the content of any warnings that should have accompanied the product.

31. Defendant Amazon failed to place any warning on the web page where the Remote was being sold. As such Defendant Amazon failed to advise Plaintiff or Plaintiff's husband the Remote contained an easily accessible button battery, and button batteries are extremely dangerous to toddlers.

32. Due to the inadequate warning, Plaintiff's husband purchased the Remote and E.G. accessed the Remote's battery, which directly resulted in injuries to E.G. after the battery lodged in her esophagus. Had Defendant Amazon provided adequate warning about the dangers associated with the Remote, Plaintiff's husband would have read the warning and would not have purchased the unreasonably dangerous Remote.

33. Defendant Amazon failed to provide an adequate warning or instruction which advised consumers of the grave dangers posed by the Remote. Defendant Amazon exercised substantial control over the content of a warning or instruction that accompanied the Remote. The warnings and instructions were inadequate and E.G.'s personal injuries resulted from the lack of warning. Defendant Amazon is liable as a nonmanufacturing seller to the extent that it failed to warn about the dangers of the Remote it was selling. TEXAS CIVIL PRACTICE & REMEDIES CODE § 82.003 (a)(4).

34. Defendants' Remote was the sole producing cause of E.G.'s injuries. Accordingly, Defendants are strictly liable for Plaintiffs' damages.

*Count 3*: Breach of Implied Warranties (All Defendants)

35. Plaintiff incorporates the preceding paragraphs by reference.

36. Defendants placed the Remote at issue in this case into the stream of commerce. Defendants were in the business of selling these types of goods. Defendants' Remote was not in the same quality as those generally acceptable in the industry. Specifically, the product did not

contain a childproof battery compartment meeting industry standards. Defendants' Remote was also not fit for the ordinary purposes for which such goods are used. The Remote was not reasonably safe for its intended or foreseeable uses.

37.   The Remote's failure to meet expected quality standards was a substantial factor in causing E.G.'s severe personal injuries and resulting damages. The defects in the Remote existed up to the time the product was purchased by Plaintiff's husband; and until the time E.G. was injured by the battery. Accordingly, Defendants are liable for breach of implied warranties.

*Count 4*: Negligence Amazon

38.   Plaintiff incorporates the preceding paragraphs by reference.

39.   Amazon sold the Remote to and for the benefit and enjoyment of consumers like Plaintiff and her family. Amazon owed duties of ordinary care to Plaintiff and E.G. in the sale of the flashlight. Defendant's conduct as outlined above breached the duties of reasonable and ordinary care. Defendant has been in the business of selling products like the Remote at issue in this case for many years. Defendant knew or should have known of the UL and other industry standards. Defendant knew or should have known of the risks associated with button batteries ingested by small children. Defendant breached its duties and negligently sold and marketed the dangerous Remotes.

40.   As a direct and proximate result of Defendant's breaches, E.G. suffered personal injuries and related damages in an amount to be determined at trial.

*Count 5*: Gross Negligence

41. Plaintiff incorporates the preceding paragraphs by reference.

42. Amazon sold the Remote at issue in this case to and for the benefit and enjoyment of consumers like Plaintiff and her family. Amazon owed duties of ordinary care to Plaintiff and E.G. in the sale of the flashlight.

43. Amazon knew that the Remote they sold was not compliant with UL standards. Defendant also knew of the easily-accessible battery compartment. The acts or omissions of Defendant, when viewed objectively from the Defendant's standpoint at the time they occurred involved an extreme degree of risk considering the probability and magnitude of the potential harm to others, including E.G. and others similarly situated. Defendant had actual, subjective awareness of the risks but proceeded with conscious indifference to the rights, safety, or welfare of others, including E.G. and others similarly situated. As a direct and proximate result of Defendant's breaches, Plaintiff suffered injuries in an amount to be determined at trial. Accordingly, Defendant is liable for gross negligence and corresponding exemplary damages.

## VI. DAMAGES

44. As a direct and proximate result of the defective Remote making the basis of this lawsuit, Plaintiff Morgan Gartner, individually and as next friend to E.G., has suffered the following actual damages:

   a. medical treatment expenses for E.G. paid or incurred in the past;

   b. medical treatment expenses for E.G. which will be necessary in the future until E.G. reaches the age of majority;

   c. bystander recovery damages for mental anguish incurred witnessing the suffering of E.G. immediately after ingesting the battery; and

      d.      other expenses and damages related to providing care for her daughter.

45. As a direct and proximate result of the defective flashlight making the basis of this lawsuit, Plaintiff E.G. has suffered the following actual damages:

      a.      past and future physical pain and suffering;

      b.      past and future physical impairment;

      c.      past and future disfigurement;

      d.      past and future mental anguish; and

      e.      future medical expenses for E.G. after she reaches the age of majority.

46. Plaintiff also seeks exemplary damages due to the Defendants' gross negligence. Plaintiff seeks monetary relief over $1,000,000.

## VII. JURY DEMAND

47. Plaintiff demands a trial by jury. Plaintiff has deposited with the clerk of Court the required fee.

## VIII. PRAYER

46. Plaintiff prays that Defendants be cited according to law to appear and answer herein, and that upon final trial, Plaintiff have judgment against Defendants, jointly and severally, as follows:

      a.      an award of actual damages as outlined above;

      b.      an award of exemplary damages;

      c.      an award of pre-judgment interest;

      d.      an award of post-judgment interest; and

      e.      any other relief the Court determines is just under the circumstances.

Respectfully submitted,

THE MEYERSON LAW FIRM, P.C.
2224 Walsh Tarlton Lane, Suite 120
Austin, Texas 78746
P:  (512) 330-9001  │  F: (512) 330-9005
E:  jeffm@meyersonfirm.com

By: _____
JEFF M. MEYERSON,
TSB No. 00788051
S.D. Texas Adm. 1096289
Attorney for Plaintiff