IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MORGAN GARTNER, INDIVIDUALLY AND AS NEXT FRIEND OF E.G., A MINOR CHILD, | § § § § | |
| Plaintiff, | § | |
| vs. | § § | CIVIL ACTION NO. 4:18-CV-02242 |
| AMAZON.COM, INC., AND HU XI JIE, | § § | |
| Defendants. | § § | |

**AMAZON'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT JAHAN RASTY**

## I.    INTRODUCTION

This product liability case involves a TV remote control sold by a third-party seller on the Amazon.com website. Plaintiff claims that her infant daughter, E.G., was injured when she swallowed the button-cell battery from the remote. Although the remote indisputably is not a toy or a product designed for children, Plaintiff asserts that it was defective because it was not childproof and lacked adequate warnings about children swallowing the battery.

Plaintiff hired Dr. Jahan Rasty to support this theory with his purported expertise. Despite having the remote in his possession, he never tested it. Rather, he tested an Apple TV remote, which uses an entirely different design. He also tested some exemplar remotes whose look and feel were, in his estimation, similar, but he did not verify that they were the same make or model. Despite never testing the remote, he opines that it was defective because the battery compartment was not secured in the manner specified by UL 4200a, a voluntary standard issued in 2015 that has never been made mandatory. He also criticized the remote for lack of warnings, despite Plaintiff and her husband knowing the remote should be kept out of reach of children.

146602155.4

Rasty's opinions are not based on reliable principles and methods, as required by Rule 702 and *Daubert*. He developed his opinions without testing the remote and bases them instead on testing different products. And his opinions about warnings address simple factual questions— whether Plaintiff knew that small objects should be kept from children and an additional warning would have mattered—that lay jurors can answer with common sense. Rasty's litigation-driven conclusions are precisely the kind of opinion testimony that *Daubert* and Rule 702 are meant to preclude.

## II.    BACKGROUND

Plaintiff's husband, Carey Gartner, bought the remote control on Amazon.com in March 2017. (First Am. Compl., ECF No. 23, ¶ 14.) Though both parents understood that the remote was not a toy and was not suitable for toddlers, they used it in E.G.'s bedroom. (Gartner Dep. at 26-27, 49, 51-52, attached as Ex. A.) They generally kept the remote out of her reach, but it was sometimes left on a table in her room. (Gartner Dep. at 33-34, 43; McMillan Dep. at 24-25, attached as Ex. B.) In April 2018, 19-month-old E.G. ingested the battery, possibly after the remote was left on the table by Plaintiff Morgan McMillan's 12-year-old son. (McMillan Dep. at 37-39.) Doctors removed it from her esophagus. (ECF No. 1, First. Am. Compl. ¶ 1.)

The battery was inside a battery compartment that was covered by a door. Nobody knows how or when the battery compartment cover was removed. (Rasty Dep. at 30:15-25; 31:1-8, attached as Ex. C.)

Plaintiff hired Dr. Jahan Rasty, who is a mechanical engineer. Rasty owns a consulting firm, Real-World Forensic Engineering, Inc., that mostly evaluates and tests products for litigation clients. (Rasty Depo. at 37:4-38:16.) Rasty opines that the remote is defectively designed because the battery compartment cover is not secured with a screw or similar mechanism. He also opines

that the remote should have warned that it is dangerous to swallow a battery.  (Rasty Rpt. at 9, attached as Ex. D.)

In an effort to justify his opinions, Rasty tested other remotes given to him by Plaintiff's counsel.  (Rasty Dep. 19:1-6.)  Despite not knowing who manufactured the remotes used for testing, Rasty assumed they were "similar" enough to the incident remote because they looked and felt the same.  (Rasty Dep. at 19:7-21:6.)  He did not verify the exemplars were from the same manufacturer because that was outside his scope of work.  (Rasty Dep. at 8:6-17.)  When asked whether there was any accepted engineering methodology that would allow him to conclude that one remote "felt" like another, Rasty stated that his conclusion was not "quantitative," but "qualitative," and that an "average person" would be able to make the same conclusion.  (Rasty Dep. at 21:17-22:16.)  Although Plaintiff's counsel gave him the remote that allegedly harmed E.G., he did not test it.  (Rasty Dep. at 18:24-19:6.)

Rasty could not identify any engineering methodology or standard that prescribed the testing he did on the other remotes.  (Rasty Dep. at 24:24-25:15; 26:23-27:1.)  As a result, his testing was ad hoc and consisted of placing a piece of duct tape on the battery cover of one the remotes supplied by Plaintiff's counsel, hanging it from something he called a "load cell" that measures force, and pulling down on it until the battery cover came off.  (Rasty Dep. at 25:5-15.)  Despite not knowing how or when the battery cover was removed or who removed it, Rasty concluded that the battery cover comes off too easily and the remote is therefore defective.

Rasty opines that the remote is defective because it does not have the childproofing features described in UL 4200a, which is a *voluntary* standard issued in 2015.  He opines that the remote should have been built like the much more expensive and differently designed Apple TV remote, which has a screw to secure the battery compartment cover.  (Rasty Rpt. at 12.)

No regulator has adopted the standard he points to.  In fact, Plaintiff's other expert, Dr. Kris Jatana, wrote in his report that "Legislative efforts for involuntary standards have been largely unsuccessful, and the Button Cell Battery Safety Act of 2011 failed to make it out of the Senate Subcommittee on Commerce, Science, and Transportation."  (Jatana Rpt. at 3-4, attached as Ex. E.)  Nowhere in his report does Rasty address the downsides of an overengineered design for people who might need easy access to the battery compartment, such as the elderly, people with arthritis, or people who lack manual dexterity.

Rasty also believes that the remote should have had warnings that swallowing a button battery is dangerous.  (Rasty Rpt. at 18.)  Notably, Plaintiff's husband knew that swallowing a button battery is dangerous and admitted that he did not read warnings on button batteries when he purchased them.  (Gartner Dep. 49-50)  Their regular practice was to put it on an out of reach shelf.  (Gartner Dep at 25)  Rasty offers no explanation why more warning would be necessary or useful, or would have changed the outcome.  (*See* Rasty Rpt. at 17-18)

## III.    ARGUMENT & AUTHORITIES

### A.    Opinion testimony must be reliable and relevant.

Dr. Rasty cannot offer opinion testimony unless he (1) is qualified as an expert by knowledge, skill, experience, training, or education, (2) the reasoning or methodology underlying the testimony is sufficiently reliable, and (3) the testimony is relevant.  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).  Plaintiff has the burden to establish that her proposed opinion testimony is admissible.  *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007).

In *Daubert*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*,

146602155.4

526 U.S. 137, 147 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony).  The purpose of the *Daubert* inquiry is to ensure that the proposed expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. at 152.  Courts need not admit testimony that is based purely on the *ipse dixit* of the expert.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The Court's gatekeeping function involves looking at reliability and relevance of the proffered opinions.

**Reliability.**  The Court uses a flexible and non-exhaustive five-factor test to assess the reliability of the methodology: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community.  *Daubert*, 509 U.S. at 592-95.

Courts may also consider other factors, such as those noted in the Advisory Committee's Note to the 2000 Amendment to Rule 702, which "remain relevant to the determination of the reliability of expert testimony":

> (1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.
>
> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.
>
> (3) Whether the expert has adequately accounted for obvious alternative explanations.
>
> (4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.

146602155.4

(5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. 702 adv. comm. note to 2000 amendment (quotation marks and citations omitted).

Expert testimony "must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (internal quotation marks omitted). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). The underlying methodology must have been also correctly applied to the facts in order for the testimony to be admissible. *Daubert*, 509 U.S. at 593; *Knight*, 482 F.3d at 352.

**Relevance.** Under Rule 702, an expert's testimony must "assist the trier of fact," meaning the evidence must be relevant. *Daubert*, 509 U.S. at 592. There must be "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591-92; *see also Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 243-44 (5th Cir. 2002) (upholding trial court's decision to exclude expert's testimony because it was not relevant under Rule 702 and would not assist fact finder).

Rasty's opinions fail both parts of this inquiry.

**B.      Rasty's Testing of Different Remotes—But Not the Remote at Issue—Is Unreliable and Irrelevant.**

Rasty's opinions fail *Daubert's* reliability and relevance requirements because they are based on testing different products. Despite having the incident remote, he inexplicably never tested it. He made no effort to show that the remotes that he tested were design, make, and model. He thought they "felt" similar to the incident remote, which is hardly the mark of analytical rigor. (Rasty Dep. at 8:6-17; 18:24-21:6.)

146602155.4

There is no way to correlate Rasty's testing to the incident remote, and his testing and resulting opinions should be excluded.  Rasty's approach of testing other remotes he assumed to be "close enough" on visual inspection is impermissible under *Daubert*.  *See Cook v. Am. S.S. Co.*, 53 F.3d 733, 739 (6th Cir. 1995), *overruled on other grounds by Gen. Elec. Co.*, 522 U.S. 136, (1997), (rejecting an expert's opinion where he did no testing on the actual rope at issue); *Pomella v. Regency Coach Lines, Ltd.*, 899 F. Supp. 335, 343 (E.D. Mich. 1995) (rejecting an expert's "eyeballing" approach used instead of making actual calculations).

Because he never tested the incident remote (or even one of the same make and model), Rasty's opinions are not based on sufficient facts or data.  Fed. R. Evid. 702(b); *see also U.S. v. Coutentos,* 651 F.3d 809, 820 (8th Cir. 2011) (expert testimony excluded when expert did not review case-specific information).  The ad hoc testing he performed on different remotes does not close the gap.  Rasty could not point to any engineering literature to support his testing method, stating that "you're not going to find any passage or any paragraph or any chapter that has anything" and that the method he used was "not specified anywhere."  (Rasty Dep. at 25:22-26:9.) The testing is also not described in the voluntary standard he claims applies to the remote.  (Rasty Dep. at 26:23-27:1.)  His methodology has not been tested or subjected to peer review, and the rate of error cannot be known in such a small sample.

Courts routinely exclude expert opinion that is not based on proper testing.  For example, in *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 986 (5th Cir. 1997), the plaintiff sued the manufacturer of a portable conveyor belt and sought to introduce expert testimony that the design was defective because the conveyor arm was supported by one wire rope.  The expert had proposed an alternative design, but he failed to calculate the loads on the wire rope for the conveyor or the loads the wire was capable of sustaining.  *Id.* at 992.  And he never inspected the wire rope at issue.  *Id.*  The

court affirmed exclusion of the testimony because the expert "made his assessment of unreasonable dangerousness and proposed his alternative designs without any scientific approach to the proposition at all." *Id.* at 992-93 (internal quotation marks and ellipses omitted). Rasty did the same thing here. He proposed alternative designs and tested other products but not the actual remote at issue. His testing tells the jury nothing about the incident remote and should be excluded.

Rasty's opinions are litigation-driven, as evidenced by his testing different products hand-picked by Plaintiff's counsel. He has hardly been "as careful as he would be in his regular professional work outside his paid litigation consulting." Fed. R. Evid. 702 adv. comm. note to 2000 amendment. Rasty has apparently never done any analysis of remotes before and developed his opinions for the purposes of testifying in this case. Experts "whose findings flow from existing research are less likely to have been biased toward a particular conclusion by the promise of remuneration." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). Thus, one "very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Id*. This factor weighs heavily against admissibility.

**C.    Rasty's opinions about the Apple TV remote are irrelevant and inadmissible.**

Rasty conducted a series of so-called "abuse" tests on what he calls an "original" Apple TV Remote under Section 6 of ANSI/UL 4200A, the voluntary standard that he claims applies to remotes. (Rasty Rpt. ¶ 7.3.4.1, *et seq*.) This case does not involve an Apple TV remote. Allowing Rasty to opine on the results of tests on a product not at issue will be prejudicial, misleading, and confusing to the jury. Fed. R. Evid. 401, 403. Any testimony related to the testing of the Apple TV remote should be excluded.

-8-

146602155.4

**D.      Rasty's opinions about warnings are not helpful to the jury and should be excluded.**

Rasty's report states that the remote "was defectively marketed as it lacks the required warning labels …." (Rasty Rpt. at ¶ 8.6.)  He bases his opinion on the ANSI/UL 4200A standard, which is an entirely voluntary standard that no regulator has adopted.  *Id.*  Essentially, he identified a voluntary standard that suggests a warning that the remote does not have, and opines that the remote is therefore defective.  There is nothing scientific or complicated about that.  A lay jury can process that theory on its own.  Rasty would improperly contribute "an aura of authority" to that theory, "which can lead juries to give more weight to [expert's] testimony."  *Elsayed Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063-64 (9th Cir. 2002), *overruled on other grounds by Estate of Barabin v. AstenJohnson Inc.*, 740 F.3d 457 (9th Cir. 2014).

The basic test whether expert testimony may be relevant is a "common sense inquiry whether the untrained layman would be qualified to determine intelligently … without enlightenment from those having a specialized understanding of the subject involved in the dispute."  *Comardelle v. Penn. Gen. Ins. Co.*, 76 F. Supp. 3d 628, 631-32 (E.D. La. 2015) (citing *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003)).  Rasty's opinions about warnings provide nothing beyond the commonsense knowledge of the average juror.  *See N. Am. Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1112 (10th Cir. 2009) (excluding expert testimony because jury was capable of comparing industry standards to facts of case without expert testimony).

## IV.      CONCLUSION

Rasty is a classic hired gun whose opinions rest on a shaky foundation and lend an unwarranted aura of expertise to a simple issue that is well within the grasp of lay jurors.  His opinions should be excluded.

146602155.4

Dated:  December 16th , 2019                    Respectfully submitted,


                                                           /s/ Clifford L. Harrison
                                                           Clifford L. Harrison
                                                           State Bar No. 09113800
                                                           charrison@munsch.com

                                                           ATTORNEY-IN-CHARGE FOR
                                                           AMAZON.COM, INC.

OF COUNSEL:

**MUNSCH HARDT KOPF & HARR, P.C.**
700 Milam, Suite 2700
Houston, Texas 77002
(713) 222-1470 (telephone)
(713) 222-1475 (facsimile)

-10-

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served upon all counsel pursuant to FEDERAL RULES OF CIVIL PROCEDURE, via e-filing electronic service on this the 16th day of December, 2019, addressed as follows:

Jeff M. Meyerson
The Meyerson Law Firm, P.C.
2224 Walsh Tarlton Lane, Suite 120
Austin, Texas  78746
*Attorney for Plaintiff*

/s/ Clifford L. Harrison
Clifford L. Harrison

146602155.4