IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MORGAN MCMILLAN, §<br>Individually and as Next Friend of E.G., §<br>a minor child, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>AMAZON.COM, INC., and HU XI JIE, §<br>§<br>Defendants. § | CASE NO. 4:18-CV-2242 |

**O R D E R**

Pending before the Court is Defendant Amazon.com, Inc.'s Motion for Summary Judgment. **(Instrument No. 33)**.

**I.**

**A.**

This tort case arises from the purchase of a generic Apple TV remote ("Remote") on Amazon.com, Inc. ("Amazon" or "Defendant") from a third-party vendor, Defendant Hu Xi Jie. (Instrument No. 23 at 1).

Amazon operates an online marketplace for sellers to offer products and buyers to purchase them. (Instrument No. 33 at 10). Amazon or a third-party vendor can be a seller on Amazon's marketplace. *Id.* To sell on Amazon's marketplace, third-party vendors must agree to the *Amazon Services Business Solutions Agreement* ("BSA"). (Instrument No. 33 at 36, ¶ 8). When third-party vendors sell products on Amazon's website, they must decide what to sell,

source the product, provide the information displayed on the product's page, set the price, and provide purchasers with any warranty. *Id.* at 37 [4:1—16].

Amazon also offers its third-party vendors services for additional fees. One of the services is the Fulfillment by Amazon ("FBA") program, to which Hu Xi Jie subscribed. *Id.* at 38, 41; (Instrument No. 1 at 4). Through this program, Amazon stores the vendor's products in Amazon fulfillment centers until the product is purchased. (Instrument No. 33 at 38 ¶15). When an order is placed, Amazon retrieves the product from its facility, packages it, applies a shipping label as required, and delivers the product. *Id.* Amazon also offers a payment processing service that charges buyers and remits the purchase price to third-party vendors, less the fees that Amazon retains. *Id.* at 39 ¶ 18. Both services are offered to third-party vendors operating outside of the Amazon marketplace. *Id.* at 39.

On March 12, 2017, Plaintiff Morgan McMillan's ("Plaintiff's") husband, Carey Gartner, ordered the Remote through Amazon. (Instrument No. 1 at 3). The Remote was listed by user "USA Shopping 7693," an account belonging to Hu Xi Jie. *Id.* at 4; (Instrument No. 33 at 9). At the time of purchase, Plaintiff and Plaintiff's husband were unaware that the remote's battery compartment could easily open without effort, revealing a lithium button battery that could loosen and fall out. Instrument No. 1 at 4.

On April 17, 2018, the Remote's battery compartment opened and exposed the button battery. *Id.* at 5. Plaintiff's 19-month-old daughter, E.G., ingested the battery, which became lodged in E.G.'s esophagus. *Id.* Plaintiff took E.G. to the emergency room where the button battery was surgically removed. *Id.* At that point, the battery's caustic fluid from its electric charge had caused severe, permanent, and irreversible damage to E.G.'s esophagus. *Id.* Plaintiff alleges that E.G.'s injuries have increased the risk for infection and choking. *Id.* at 6.

In April 2018, Plaintiff notified Amazon of the incident and requested that it cease the sale of Hu Xi Jie's remotes. (Instrument No. 45 at 7). In response, Amazon removed the product from the Amazon marketplace and requested information from Hu Xi Jie. (Instrument No. 33 at 12). Hu Xi Jie did not respond *Id.* Accordingly, Amazon suspended Hu Xi Jie's account "USA Shopping 7693" and the remote remains unavailable. *Id.* Amazon allegedly reported the incident to the Consumer Product Safety Commission, which has yet to act. (Instruments No. 45 at 7; No. 33 at 177). Because there is no evidence of safety issues for other products, Amazon has not acted against other remotes for sale in the marketplace. (Instruments No. 45 at 7; Instrument No. 33 at 168-69).

### B.

Plaintiff filed her Complaint on June 29, 2018, raising five causes of action against Amazon: (1) strict liability for design defect; (2) strict liability for marketing defect; (3) breach of implied warranty; (4) negligence; and (5) gross negligence. (Instruments No. 1 at 8-9; No. 33 at 12). As to Hu Xi Jie, Plaintiff asserts claims for strict liability for design defect and breach of implied warranty. (Instrument No. 1 at 8-9). Defendant Amazon filed its Answer on August 8, 2018. (Instrument No. 5).

Because Hu Xi Jie is a Chinese individual or entity with its principal place of business in China, Plaintiff served Hu Xi Jie through the Texas Secretary of State. (Instruments No. 23 at 2; No. 26). Plaintiff attempted to serve Hu Xi Jie on July 17, 2018 and March 5, 2019. (Instrument No. 45 at 98, 100). Hu Xi Jie failed to answer or otherwise make an appearance as required by law. *Id.*

On April 4, 2019, Plaintiff filed her Amended Complaint. (Instrument No. 23). Amazon filed its Answer on April 25, 2019. (Instrument No. 25). On August 6, 2019, Amazon filed its

Motion for Summary Judgment. (Instrument No. 33). On September 5, 2019, Plaintiff filed her Response. (Instrument No. 45). In turn, Amazon filed its Reply in Support of its Motion for Summary Judgment on September 16, 2019. (Instrument No. 51).

## II.

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Initially, the movant has "the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant meets this burden, the nonmovant must go beyond the pleadings and point out specific facts in the record showing the existence of a genuine issue for trial. *Id.* "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018) (internal quotations omitted)

In deciding a summary judgment motion, the district court does not make credibility determinations or weigh evidence, *E.E.O.C. v. Chevron Phillips Chem. Co.*, *LP*, 570 F.3d 606, 612 n.3 (5th Cir. 2009), although the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Similarly, "[u]nsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are

insufficient to defeat a motion for summary judgment." *Clark v. Am.'s Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997).

## III.

First, Defendant moves for summary judgment on all claims because it argues that it is not a seller of the Remote. (Instrument No. 33 at 13). Defendant contends that Plaintiff's causes of action all hinge on its seller status and, since Defendant is not a seller, Plaintiff's claims fail as a matter of law. *Id.* Second, Defendant moves for summary judgment because it argues that the Communications Decency Act bars Plaintiff's claims. *Id.* at 25.

Plaintiff alleges that Defendant is a nonmanufacturing seller of the Remote. (Instrument No. 23 at 8). Consequently, as seller of the Remote, Plaintiff argues that Defendant is strictly liable for the defects of the Remote, breached the implied warranties, and violated its duty of care, resulting in negligence and gross negligence. *Id.* at 7-11. Plaintiff also contends that the Communications Decency Act is not applicable to this case. (Instrument No. 45 at 16).

Because the Court is sitting in diversity and this is a product liability case, Texas law governs Plaintiff's claims. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

## A.

As a preliminary matter, this Court must review whether manufacturer Hu Xi Jie is subject to the jurisdiction of this Court.

Texas law states that a nonmanufacturing seller of a product is not liable for harm caused by the product. Tex. Civ. Prac. & Rem. Code § 82.003(a). However, § 82.003 lists seven exceptions. *Id.* Among these is an exception where "the manufacturer of the product is . . . not subject to the jurisdiction of the court." *Id.* § 82.003(a)(7)(B). Plaintiff points to this exception as one of the reasons Amazon—an alleged seller—is liable for the Remote's defect. (Instruments

5

No. 23 at 8-9; No. 45 at 15-16). Because of this, the Court must first determine if Hu Xi Jie is subject to this Court's jurisdiction.

Section 82.003(c) lays out a procedural mechanism that claimants must follow to receive a "conclusive presumption" that a manufacturer is not subject to jurisdiction of the court. *See id.* § 82.003(c). The provision states that the claimant can serve the manufacturer through the Texas Secretary of State. *Id.* If the manufacturer fails to answer or "otherwise make an appearance," the burden shifts to the seller "to secure personal jurisdiction over the manufacturer in the action." *Id.* Otherwise, it is conclusively presumed that the manufacturer is outside the court's jurisdiction and the seller can be held liable for the product's defect. *Id.*

Prior to the adoption of subsection (c), the claimant had to "prove the negative" by showing that the manufacturer did not establish minimum contacts with Texas. *See Fields v. Klatt Hardware & Lumber, Inc.*, 374 S.W.3d 543, 547 (Tex. App.—San Antonio 2012). Claimants may use the mechanism laid out under § 82.003(c) but still have the option of proving the negative to satisfy their burden. *See Canter v. Big Lots Stores, Inc.*, No. 3:13-CV-865-P, 2014 WL 12531157, at *2 (N.D. Tex. Feb. 21, 2014).

Here, Plaintiff served Hu Xi Jie through the Texas Secretary of State twice and has provided proof of service. (Instruments No. 26; No. 45 at 98, 100). Because Plaintiff properly attempted service on Hu Xi Jie in accordance with § 82.003(c), Plaintiff is not required to undertake the more burdensome task of proving the negative, which is to show that the manufacturer made insufficient contacts with Texas. *Cf. Canter*, 2014 WL 12531157, at *2 (requiring claimant to "prove the negative" because claimant failed to serve manufacturer through the Texas Secretary of State). Thus, Plaintiff has satisfied her burden under § 82.003 and the burden now shifts to the seller to secure personal jurisdiction over Hu Xi Jie.

Ultimately, to determine the jurisdictional issue, the Court must determine if Amazon is a seller.

**B.**

It is uncontested that Hu Xi Jie is the manufacturer and actual seller of the Remote. (Instruments No. 23 at 7; No. 33 at 13-14). The dispute here hinges on whether Amazon is also a seller and can be held liable for the product's defects. (Instrument No. 33 at 13).

**1.**

The Court first turns to the definition of "seller." To support its claim that it is not a seller, Defendant cites to the common law definition of seller, ordinary meaning of the word "sell," and the definitions of "sale" under Black's Law Dictionary and Texas Business and Commercial Code. (Instrument No. 33 at 14-15). Plaintiff argues that Defendant is a seller under Texas law, relying on the Restatement (Second) of Torts § 402A and Texas's products liability statute for support. (Instrument No. 45 at 8).

To determine whether Amazon is a "seller," the Court must defer to Texas law. In Texas, courts first construe statutes by looking to the plain meaning of the statute's words. *Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, 865 (Tex. 1999). "If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms." *Id.* If the statute is unambiguous, "rules of construction or other extrinsic aids cannot be used to create ambiguity." *Id.* at 866. Here, the Court finds the statutory language, with the help of Texas case law, to be unambiguous and will thus analyze it without extrinsic aids.

Texas adopted § 402A of the Restatement (Second) of Torts for strict products liability claims, which imposes liability on those who sell defective products that are unreasonably

7

dangerous. *See Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788–789 (Tex. 1967); Restatement (Second) of Torts § 402A (1965). Section 402A applies to any person engaged in the business of selling a product for consumption. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996). This has included manufacturers, distributors, lessors, bailors, and dealers. *See New Texas Auto Auction Servs., L.P. v. Hernandez*, 249 S.W.3d 400, 403 (Tex. 2008) (dealers); *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 377 (Tex. 1978) (discussing strict liability application to bailors); *Rourke v. Garza*, 530 S.W.2d 794, 800 (Tex. 1975) (lessors); *McKisson v. Sales Affiliates*, 416 S.W.2d 787, 790 n.3 (Tex. 1967) (distributors and manufacturers).

In light of § 402A, the Texas Legislature enacted its products liability statute. *See* Tex. Civ. Prac. & Rem. Code § 82.001 (1993); *Gomez de Hernandez v. New Texas Auto Auction Servs., L.P.*, 193 S.W.3d 220, 225 (Tex. Ct. App. 2006), *rev'd on other grounds*, 249 S.W.3d 400 (Tex. 2008). Chapter 82 allows actions

> against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

Tex. Civ. Prac. & Rem. Code § 82.001(2).

Chapter 82 defines "seller" as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." Tex. Civ. Prac. & Rem. Code § 82.001(3). Whether an entity is considered a "seller" by this definition depends on the specific facts at issue. *See Centerpoint Builders GP, LLC v. Trussway, Ltd.*, 496 S.W.3d 33, 41 (Tex. 2016).

First, to be "engaged in the business," a seller does not need to actually sell the product; introducing the product in the stream of commerce is enough. *See Firestone Steel Prods.*, 927 S.W.2d at 613; Restatement (Second) of Torts § 402A (cmt. f). Additionally, a service provider can also be "engaged in the business" of placing a product in the stream of commerce as a seller. *See Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 899 (Tex. 2010) ("Chapter 82's definition of 'seller' does not exclude a seller who is also a service provider, nor does it require the seller to only sell the product") (internal citations omitted); *Thomas v. St. Joseph Hospital*, 618 S.W.2d 791, 796 (Tex. Civ. App.—Houston [1st. dist.] 1981, *writ ref'd n.r.e.*) (acknowledging the existence of a "sales/service hybrid situation"). But a service provider is not "engaged in the business" of selling a product if providing that product is incidental to selling services. *Centerpoint Builders GP*, 496 S.W.3d at 40 (holding that general contractor was not engaged in the business of selling trusses necessary to provide its services of constructing a building because it did not intend to gain a profit from the sale and was reimbursed for the cost of materials); *cf. Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 899 (Tex. 2010) (holding that Fresh Coat was in the business of selling a specific product that it was hired to install). The entity that introduces the product in the channels of commerce must be in the "same position as one who sells the product." *New Texas Auto Auction*, 249 S.W.3d 400, 403 (Tex. 2008) (noting that an advertising agency that provides copy, a newspaper that distributes circulars, an internet provider that lists store locations are insufficiently "engaged" in a product's sales).

Second, "distributing or otherwise placing" a product in the stream of commerce may include one taking physical possession of, exerting control over, or delivering the product. *See Moses v. Zimmer Holdings, Inc.*, No. H-06-1350, 2007 WL 3036096, at *5 (S.D. Tex. June 29, 2007) (Lake, J.). A service provider that enables a transaction between two parties, without

exercising control over the product, does not "place" a product in the stream of commerce. *Ames v. Ford Moto Co.*, 299 F. Supp. 2d 678, 679 (S.D. Tex. 2003). Further, "placing a product" in the stream of commerce must be more than merely presenting or introducing the product to consumers. *New Texas Auto Auction*, 249 S.W.3d at 405 (noting that an emcee at a trade show introducing a product is not "placing" the product in the stream of commerce).

Last, to place a product in the "stream of commerce," a product "must be released in some manner to the consuming public." *Armstrong Rubber Co.*, 570 S.W.2d 374, 376 (Tex. 1978). It does not need to be sold to enter the stream of commerce but must either be available for purchase or to facilitate the purchase of products by the public. *See PS Investments, L.P., v. Southern Instrument & Valve Co., Inc.*, 438 S.W.3d 638, 642-43 (Tex. Ct. App. 2014).

**2.**

Defendant first argues that it is not a seller because it is a service provider. (Instrument No. 33 at 17, 20). It further argues that it facilitates, rather than places, products in the stream of commerce. *Id.* at 15-16. Defendant contends that its marketplace is much like an auctioneer as they play only an incidental role in a product's placement in the stream of commerce. *Id.* at 15-16, 21. In support of this argument, Defendant relies on *New Texas Auto Auction Services, L.P. v. Hernandez*, 249 S.W.3d 400 (Tex. 2008). *Id.* at 15-18.

The parties do not dispute that Defendant is a service provider, *see* (Instrument No. 45 at 10-12), but they dispute whether Defendant is a seller. The fact that Amazon is a service provider does not preclude Defendant from also being a seller. *See Fresh Coat, Inc.*, 318 S.W.3d at 899 (holding that a service provider was also a seller). The terms of the BSA indicate that Amazon is integrally involved in and exerts control over the sale of third-party products. *See* (Instrument No. 33 at 43-91). Although Hu Xi Jie provided the product packaging for the Remote, Amazon,

through its FBA program, stored the Remote, packaged and prepared the Remote for delivery, and delivered the Remote to Plaintiff. (Instrument No. 45 at 10; No. 33 at 76-78, 81). While Amazon does not directly set the price of the Remote, it sets the fees that it retains for itself from the sale of the Remote. (Instrument No. 33 at 62). It also controls the process by which the consumer pays for the product and the third-party vendor receives the payment, less the amount Amazon retains. *Id.* Amazon retains the right to withhold payments to the third-party vendor if it determines that the vendor's actions or performance may result in "returns, chargebacks, claims, disputes, or other risks" or if the vendor's account has been used to engage in "deceptive, fraudulent, or illegal activity." *Id.* at 45. In addition, Amazon requires third-party vendors to register its products with Amazon in order to use the FBA services and Amazon has the right to exclude registration of any product, "including on the basis that it is an FBA Excluded Product or that it violates applicable [policies]." *Id.* at 76. Amazon also operates as the sole channel of communication between customers and vendors, and mandates that vendors display "any specific disclosures, messaging, notices, and policies" on vendors' media platforms as required by Amazon. (Instrument No. 33 at 80). This vignette of the relationship between third-party vendors and Amazon confirms a finding that Amazon is integrally involved in and exerts control over the sales of third-party products such that it qualifies as a seller under Chapter 82.

Secondly, Defendant claims it is analogous to the auctioneer in *New Texas Auto Auction*, however, in that case, the Texas Supreme Court narrowly analyzed whether an auctioneer is a seller in an atypical scenario where the auctioneer held title to an automobile it auctioned. *See New Texas Auto Auction*, 249 S.W.3d at 405. The parties in that case agreed that auctioneers are generally not considered sellers and the Court even noted that the Restatement (Third) of Torts specifically excludes auctioneers from products liability. *Id.* at 404-05 (quoting Restatement

11

(Third) of Torts § 20 (1998) (cmt. g)). The Court held that an auctioneer, as an occasional seller of automobiles, was not a "seller" under Chapter 82 because it was "not in the business of selling automobiles for its own account." *Id.* at 406. *New Texas Auto Auction* is factually dissimilar to the case at hand. Here, there is no discussion of an occasional seller and no consensus between Plaintiff and Amazon that Amazon is generally not a seller.

While the Fifth Circuit has yet to address "seller" under Chapter 82, additional guidance is found in two district court cases. In *Ames v. Ford Motor Company*, a customs broker that assisted a purchaser in completing paperwork to import a defective vehicle into Mexico was found to not be a seller of that vehicle. 299 F. Supp. 2d 678, 678-79 (S.D. Tex. 2003) (Kazen, J.) The district court reasoned that the entity was only a service provider and its provision of services, without more, did not make that defendant a seller. *Id.* at 680. In *Moses v. Zimmer Holdings Inc.*, defendant Zimmer Nagel contended that it was not a seller of a medical device because it took no part in creating the device and only acted as a service provider, serving as a conduit between the hospitals' requests and another company's medical devices. *Moses v. Zimmer Holdings Inc.*, No. H-06-1350, 2007 WL 3036096, at *4 (S.D. Tex. June 29, 2007) (Lake, J.). In determining the improper joinder issue in front of the district court, the Court held that "a reasonable basis exists to predict that plaintiffs can establish Zimmer Nagel was a seller under the Act." *Id.* at *6. The Court differentiated its case from *Ames*, stating that the customs broker in *Ames* never took physical possession or had control of the product. *Id.* at *5. In contrast, Zimmer Nagel not only facilitated the sale between the parties, but also delivered the medical device to the hospital, thus placing the product in the stream of commerce. *Id.*

The case here is more analogous to *Moses* than *Ames* as Amazon was an integral component in the chain of distribution of the Remote. Amazon was not providing a discrete

service in the sale of the Remote like the customs broker in *Ames* and was more involved in placing the product in the stream of commerce than was Zimmer Nagel in *Moses*. Not only did Amazon facilitate the sale and deliver the product like Zimmer Nagel, but it also held onto the products, earned an amount from each sale, and exercised control over the transaction by retaining the rights enumerated above. In accordance with the holding declared in *Centerpoint Builders*, this sale was not incidental to Amazon's services. *See Centerpoint Builders*, 496 S.W.3d at 40. Thus, Amazon was engaged in the business of placing the product in the stream of commerce and, therefore, qualifies as a seller under Chapter 82.

Defendant contends that its FBA program and other services offered do not automatically transform Defendant into a seller. (Instrument No. 33 at 23). The Court agrees. As stated earlier, determining whether an entity is a "seller" is a fact-specific inquiry. *See Centerpoint Builders*, 496 S.W.3d at 41. The record indicates that third-party vendors can use Amazon's services in ways other than the way it was used in the facts presented to this Court. (Instrument No. 33 at 13, 39 ¶ 18) (noting that FBA and payment processing services can be used by sellers to facilitate sales made on their own independent websites). As such, the holding here would not extend to those circumstances. The record supports a finding that Amazon is a "seller" under Chapter 82 based on the specific facts of this case and Amazon's deep involvement in the sales of this third-party vendor.

Defendant additionally argues that it is not a seller because it never took title to the Remote. (Instruments No. 33 at 18-19). However, Defendant can still be considered a seller. The cases Defendant relies upon required transfer of title in order for an entity to be considered a seller. *See Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 141 (4th Cir. 2019) (noting that liability under Maryland law focuses on title); *Milo & Gabby LLC v. Amazon.com, Inc.*, 693 Fed.

App'x 879, 885 (Fed. Cir. 2017) (focusing on transfer of title or property to determine "seller"); *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 398 (S.D.N.Y. 2018) (commenting that failure to take title places entity outside chain of distribution under New York law). Conversely, Texas law does not require an entity to transfer title or sell a product to be considered a seller. *See Firestone Steel Prods. Co.*, 927 S.W.2d at 613; *see also Kirby v. Smith & Nephew, Inc.* No. 3:15-CV-2543-L, 2017 WL 661373, at *7 n.2 (N.D. Tex. Feb. 17, 2017) (Lindsay, J.) (noting that Chapter 82 does not require an entity to have title or ownership interest in the products sold). Instead, Texas law focuses on whether the entity, as a part of its regular business, distributed or placed a product into the stream of commerce. *See* Tex. Civ. Prac. & Rem. Code. § 82.001(3); *cf. New Texas Auto Auction*, 249 S.W.3d 400 at 405 (focusing on whether the entity was in the business of selling automobiles, not on the fact that the entity held title to the automobile). Thus, transfer of title is not required to qualify Amazon as a "seller" under Chapter 82.

Defendant also asserts that the policy justifications for strict liability rule against it being considered a seller. *See* (Instrument No. 33 at 22). Defendant contends that it is not a seller because it has no relationship with the manufacturer, rendering it unable to directly pressure the manufacturer on safety or spread the cost of defects across units sold. *Id.* The Texas Supreme Court has stated that strict liability is limited to those who actually placed a product in the stream of commerce because those entities are capable of "(1) compensating injured consumers, (2) spreading potential losses, and (3) deterring future injuries." *New Texas Auto Auction*, 249 S.W.3d at 404. Amazon need not be able to directly pressure the manufacture on safety in order to be considered a seller. Among other rights stated earlier, Amazon sets fees that it would retain for the sale of a third-party product, protects itself by requiring third-party vendors to indemnify Amazon should any "claim, loss, damage, settlement, cost, expense or other liability" occur, and

reserves the right to refuse to provide FBA services for a product that does not comport with Amazon's policies. *See, e.g.*, (Instrument No. 33 at 46, 62, 76). With the rights retained, Amazon could halt the placement of defective products in the stream of commerce, deterring future injuries. Indeed, Amazon proved this to be true when it pulled Hu Xi Jie's products from the marketplace after Plaintiff brought the defect to Amazon's attention. (Instrument No. 33 at 12). Thus, Amazon did have a relationship with the manufacturer that comported with the purposes of strict liability.

Accordingly, because Defendant is a "seller" under Texas Civil Practice & Remedies Code § 82.003, Defendant's Motion for Summary Judgment as to products liability is DENIED.

## C.

Defendant argues that even if Defendant is considered a "seller" under Texas law, the Communications Decency Act ("CDA"), 47 U.S.C. § 230, bars all of Plaintiff's claims. (Instrument No. 33 at 25).

The CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 is "Congress's grant of broad immunity to internet service providers for all claims stemming from their publication of information created by third parties, which we and other circuits have consistently given a wide scope." *Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016) (internal citations omitted). "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

Parties do not dispute that Amazon qualifies as an interactive computer service provider. *See* (Instruments No. 33 at 28; No. 45 at 16); *see also* 47 U.S.C. § 230(f)(3) (defining

"information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."). The record also shows that the information at issue—the product detail page for the Remote—was provided by another information content provider, Hu Xi Jie, which was then published by Amazon. (Instrument No. 33 at 28-29).

Defendant contends that the claims are barred because Plaintiff seeks to treat Defendant as a publisher or speaker of the Remote's product detail page. (Instrument No. 33 at 28, 29). Defendant asserts that Plaintiff's claims stem from the premise that Defendant is liable for permitting Hu Xi Jie to "post a product offer on its website, failing to police or remove that offer, and failing to warn of potential harm from the product described in that offer." *Id.* at 30. Plaintiff refutes this characterization of her claims and argues that her claims are solely based on Amazon's involvement in placing the Remote in the stream of commerce. (Instrument No. 45 at 16).

The Fifth Circuit has barred claims that hold internet service providers liable for failure to monitor, screen, or delete third-party-generated content. *See Doe v. Myspace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (quoting *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003)). In *Doe*, the Fifth Circuit barred negligence claims against an online social network alleging that it took insufficient precautions to prevent a teenager from lying about her age, resulting in her being contacted online and sexually assaulted. *Id.* at 420, 422. Similarly, Amazon cannot be held liable for taking insufficient precautions to prevent a third-party vendor from lying, or omitting information, about the defect or dangers of the Remote.

Specific to her failure to warn claims, Plaintiff contends that she only seeks to hold Amazon liable for its failure to provide warning labels on the actual packaging. (Instrument No.

45 at 16). However, Plaintiff's First Amended Complaint alleges liability for failure to "place any warning on the web page where the Remote was being sold." Plaintiff's Response also states that she seeks to hold Amazon liable due to its control over the Remote's product detail page, insinuating liability due to Amazon's editorial control over its website. (Instruments No. 23 at 9; 45 at 16). Insofar as Plaintiff's claims might relate to Amazon's editorial control over the product detail page and failure to provide adequate warning on the page, those claims would be barred by the CDA and Defendant's Motion is granted on those claims. As to Plaintiff's claims that relate only to Amazon's involvement in the sales process of third-party products, the CDA does not apply and Defendant's Motion is denied as to those claims.

Accordingly, Defendant's Motion for Summary Judgment as to the Communications Decency Act, as it relates to Amazon's editorial control over its website, is GRANTED.

## IV.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part. (**Instrument No. 33**).

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this ___8th___ day of June, 2020.

_____<br>
**VANESSA D. GILMORE**<br>
**UNITED STATES DISTRICT JUDGE**